**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| ROBERT BRATTON, Individually and on behalf of all others similarly situated in Missouri,<br><br>        Plaintiffs,<br><br>vs.<br><br>THE HERSHEY COMPANY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)   Case no.: 2:16-cv-4322-C-NKL<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Defendant The Hershey Company moves to dismiss the Second Amended Complaint under Fed. R. Civ. P. 12(b)(6). Doc. 47. The motion is denied.

## I. Background[1]

Hershey manufactures Reese's® Pieces® and Whoppers® candies. The products are regularly sold at grocery stores, convenience stores, and other food retail outlets throughout Missouri and the rest of the United States. Bratton bought opaque, non-pliable, cardboard boxes of Reese's Pieces and Whoppers for about $1.00 apiece at a Gerbes grocery store in Missouri, for

---

[1] For purposes of deciding the motion to dismiss for failure to state a claim, the Court accepts the factual allegations contained in the Second Amended Complaint as true. *Eckert v. Titan Tire Corp.* 514 F.3d 801, 806 (8th Cir. 2008). The Court may also consider documents attached to, or materials that are necessarily embraced by, the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotations and citations omitted). The Second Amended Complaint includes allegations about markings on the candy boxes at issue and includes pictures of the front of the boxes. Hershey provided pictures of the front as well as the back of the boxes in an affidavit attached to its motion to dismiss. The Court will consider Hershey's affidavit inasmuch as the information is necessarily embraced by the pleadings.

Hershey subsequently deposited with the Court "samples of the products at issue in this matter: the 4-ounce Reese's Pieces cardboard box and the 5-ounce Whoppers cardboard box." The sealed boxes bear the same markings as those depicted in the complaint and Hershey's affidavit.

his personal use. His lawsuit focuses on Hershey's packaging of the candies.

Consumers spend an average of 13 seconds making an in-store purchasing decision. The decision is heavily dependent on a product's packaging, in particular, the package dimensions. When faced with a large box and a smaller box, both containing the same amount of product, a consumer is more likely to choose the larger one, thinking it is a better value.

The dimensions of a Reese's Pieces box are 2 $^9/16''$ x $^{11}/16''$ x 6 $^1/16''$. The front of the box includes the description, "PEANUT BUTTER CANDY IN A CRUNCHY SHELL." Doc. 33, p. 8. The front of the box also states: "NET WEIGHT 4 OZ (113 g)"; "51 PIECES PER SERVING"; "200 CALORIES"; "8 g SAT FAT"; "45 mg SODIUM"; and "21 g SUGARS." Doc. 33, p. 8. On the back of the box, the "Nutrition Facts" panel states that there are "about 3" servings in the container. Doc. 48-1, p. 3. About 29% of each box has "slack filled," or empty, space.

The dimensions of a Whoppers box are 4″ x 1 $^1/8''$ x 6 $^5/8''$. The front of the box includes the description, "THE ORIGINAL MALTED MILK BALLS[,] Naturally and Artificially Flavored," and includes a picture of a few dozen malted milk balls in the lower left corner. Doc. 33, p. 6. The front of the box also states, "NET WEIGHT 5 OZ (141 g)." Doc. 33, p. 7. On the back of the box, the "Nutrition Facts" panel states that there are "18 pieces (41 g) per serving" and "about 3.5" servings in the container. Doc. 48-1, p. 4. About 41% of each box has slack filled space.

Bratton alleges that he "attached importance" to the "size" of the Reese's Pieces and Whoppers boxes, and was misled to believe that he was "purchasing more Product than was actually received." Doc. 33, p. 14, ¶ 56. He alleges that boxes are "uniformly under-filled" or "'slack-filled,'" *id.*, p. 2, ¶ 3; the slack-filled space serves no purpose; and had he known the boxes

were "substantially slack-filled," he would not have purchased the products or would have purchased them on different terms, *id.,* p. 14, ¶ 56.  He alleges that he "suffered an ascertainable loss as a result of [Hershey's] unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented." *Id.*, p. 33, ¶ 57.  Bratton alleges that he "would…likely purchase the Products in the future if the Products complied with applicable laws." *Id.*, p. 33, ¶ 58.

Bratton filed this lawsuit in state court as a putative class action.  In Count I, he claims a violation of the Missouri Merchandising Practices Act (MMPA) for a Missouri Consumer Subclass, and he requests injunctive relief and damages under the statute.  Count II is a claim for unjust enrichment brought on behalf of All Classes (class members in all states who purchased the products), in which Bratton requests restitution or disgorgement of Hershey's economic enrichment.  Hershey removed the action to Federal court.

## II.  Discussion

Hershey argues that Count I must be dismissed because Bratton fails to state a claim under the MMPA and has no standing to seek injunctive relief.  Hershey argues that Count II must be dismissed because it is vague; Bratton lacks standing to assert non-Missouri-based claims; and the count is premised on the same conduct as the unsuccessful MMPA claim.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A complaint is plausible if its "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal,* 556 U.S. at 678).  A court must "'draw on its judicial experience and common

sense,'" and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group,* 592 F.3d 893, 896 n. 4 (8th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

### A.      Count I—The MMPA claim

The elements of a claim under the MMPA are: (1) the purchase of goods or services, (2) primarily for personal or household purposes; and (3) an ascertainable loss of money or property, (4) as a result of, or caused by, the use or employment by another person of a method, act, or practice declared unlawful under the MMPA.  §§ 407.020 and 407.025.1.  *See also Murphy v. Stonewall Kitchen, LLC,* 503 S.W.3d 308, 311 (Mo. App. 2016); and MO. APPROVED INSTRUCTIONS (CIVIL) 39.01 (7th ed.).

Hershey argues that the MMPA count must be dismissed because Bratton's allegations concerning unlawful practice and ascertainable loss are not plausible.  For the reasons discussed below, the Court concludes that the allegations are sufficient to state a claim. [2]

### 1.      Allegation of an unlawful practice

The Missouri Supreme Court has characterized the MMPA as "'paternalistic legislation designed to protect those that could not otherwise protect themselves.'" *High Life Sales Co. v. Brown-Forman, Corp.,* 823 S.W.2d 493, 498 (Mo. 1992) (*quoting Electrical and Magneto*

---

[2]      Hershey correctly notes that Fed. R. Civ. P. 9(b)'s heightened pleading standard applies when a plaintiff alleges fraud under the MMPA.  Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See also Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (applying Rule 9(b) pleading standard to fraud claim brought under the MMPA).  But "[t]he special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a high degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to allegations of" fraudulent conduct.  *Id.*  Bratton has satisfied Rule 9(b).  The allegations in the Second Amended Complaint are sufficiently specific and Hershey has therefore been provided notice of the allegedly fraudulent conduct that forms the basis for Bratton's claims.

*Service Co. v. AMBAC Intern'l Corp.,* 941 F.2d 660, 663 (8th Cir. 1991)). *See also Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 725 (Mo. 2009) (en banc) (noting that the legislature enacted the MMPA to "regulate the marketplace to the advantage of those who may fall victim to unfair business practices"). As such, the law is very broadly written. Section 407.020(1) declares and describes unlawful practices as follows:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce … in or from the State of Missouri, is declared to be an unlawful practice.

*See also* 34 MO. PRACTICE PERSONAL INJURY AND TORTS HANDBOOK § 29:2, "Elements of the action" (2016 ed.) ("The prohibitions of V.A.M.S. § 407.020 are construed broadly to reach any deception or unfair practice[.]") (and citations therein).

The focus of the statutory scheme is on the defendant's conduct. "A consumer's reliance on an unlawful practice is not required under the MMPA." *Murphy*, 503 S.W.3d at 311 (citing *Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758, 774 (Mo. 2007) (en banc)). Ultimately, the MMPA requires courts to make case-by-case determinations of whether a defendant's conduct violates principles of fair dealing. *Huch v. Charter Commc'ns, Inc.,* 290 S.W.3d 721, 724 (Mo. 2009) (*en banc*).

"[I]n order to prevent evasion by overly meticulous definitions," the statutory scheme does not provide definitions of any particular unlawful practices. *Clement v. St. Charles Nissan, Inc.,* 103 S.W.3d 898, 900 (Mo. App. 2003) (citing *State ex rel. Webster v. Areaco Inv. Co.,* 756 S.W.2d 633, 635 (Mo. App. 1988)). The Missouri Supreme Court explained in *Ports Petroleum Co. of Ohio v. Nixon* that absent statutory definitions, it would "consider[] the plain and ordinary meaning of the words themselves,…which," in the case of "unfair practice" were "unrestricted,

all-encompassing and exceedingly broad." 37 S.W.3d 237, 240 (Mo. 2001). Accordingly, "[f]or better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree." *Id.*

The MMPA does grant the Missouri Attorney General authority to promulgate rules, and the rules that have been promulgated under the MMPA are instructive here. *See United Pharmacal Co. of Mo. v. Mo. Bd. of Pharmacy,* 159 S.W.3d 361, 365 (Mo. 2005) (en banc) (properly promulgated rules have the force and effect of law). For example, under 15 C.S.R. § 60-9.020(1), "deception" is defined as "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." Under 15 C.S.R. § 60-9.030(1), "Deceptive Format," "[i]t is deception for any person in an advertisement or sales presentation to use any format which because of its overall appearance has the tendency or capacity to mislead consumers." Another rule, 15 C.S.R. § 60-9.070(1), defines "misrepresentation" as "an assertion not in accord with the facts[.]" The rules further provide that reliance and intent are not elements that must be proven to establish deception or misrepresentation for purposes of § 407.020(1). § 60-9.020(2) and § 60-9.070(2). The regulation concerning "unfair practice[s]" provides that proof of deception, fraud, or misrepresentation is not required. 15 C.S.R. § 60-8.020(2).

At the motion to dismiss stage, the Court's focus is on what is alleged in a plaintiff's complaint. Bratton alleges that Hershey's packaging, containing slack-filled space, misled him to believe that the boxes contained more candy than they actually did, and that Hershey's conduct constituted the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and the concealment, suppression, or omission of any material facts in connection with the sale of advertisement of their products, in violation of the MMPA.

Doc. 33, p. 18. He also alleges that the actual value of the product he purchased was less than the value of the product as represented by the packaging. *Id.* at 19. More specifically, Bratton alleges that consumers spend an average of 13 seconds making an in-store purchasing decision. The decision is heavily dependent on a product's packaging, in particular, the package dimensions. When given a choice, consumers are more likely to choose larger boxes, thinking they are a better value. Hershey makes its candy boxes from opaque, non-pliable cardboard. Hershey fills the boxes such that 29% of a box of Reese's Pieces is empty and 41% of a box of Whoppers candies is empty. The empty, or slack-filled, space in the boxes serves no purpose, such as protection of the contents. The slack-filled space is not attributable to settling of the contents. Nothing prevents Hershey from placing more candy in the boxes, or reducing the size of the boxes. *Id.* at pp. 10-13.

As discussed above, consumer protection is paramount under the MMPA and its prohibitions are construed broadly. The Missouri Supreme Court has explained that an "unfair practice" under the MMPA covers every unfair practice imaginable and every unfairness, to whatever degree. Practices made unlawful by the act are also broadly defined by regulation, such as deception, which is any practice having the tendency or capacity to mislead, deceive, cheat, or create a false impression; or misrepresentation, which is an assertion not in accord with the facts. A plaintiff need not even allege or prove reliance on an unlawful practice to state a claim under the act. Hershey's candy boxes are opaque and non-pliable, and a reasonable consumer could conclude that the size of a box suggests the amount of candy in it. Larger packages are attractive to consumers, and consumers tend to make their purchasing decision in 13 seconds. Yet there is 29% non-functional, slack-filled space in a Reese's Pieces box and 41% in a Whoppers box. Bratton has plausibly alleged, at minimum, that the packaging unfairly suggests the boxes contain

more product than they actually do, or tends to or has the capacity to mislead consumers or to create a false impression, which is sufficient for purposes of alleging an unlawful practice under the MMPA.  The Court cannot conclude as a matter of law and at this stage of the litigation that the packaging is not misleading.  *See, e.g., Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312-13 (Mo. App. 2016) (declining to decide how a "reasonable consumer" would perceive the term "all natural" at an early stage of litigation, and holding that the question is appropriately addressed on a motion for summary judgment or trial); and *Thornton v. Pinnacle Foods Grp. LLC*, 2016 WL 4073713, at \*3 n.3 (E.D. Mo. Aug. 1, 2016) ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact that cannot be resolved on a motion to dismiss.").[3]

The Court's conclusion that Bratton has plausibly alleged an unlawful practice is reinforced by Bratton's allegations concerning a Federal regulation that prohibits slack-fill in packaging, subject to six exceptions which Bratton alleges do not apply here.  Doc. 33, pp. 5-6. [4]

---

[3]     *See also In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 2016 WL 6078250, at \*6 (D.D.C. 2016) ("The size of a package signals to the consumer vital information about a product and is as influential in affecting a customer's choices as an explicit message on its surface.  Moreover, in this case, the size of McCormick's [pepper] containers is exactly what makes them misleading, because consumers cannot see the amount of their contents.") (internal quotation omitted); and *Hobby Indus. Assn. of Am., Inc. v. Younger*, 101 Cal. App. 3d 358, 367–68 (Ct.  App. 1980)  ("Clear disclosures on labels, scale drawings, and other informative matter may not counteract the impression created by the size of the package, and in this sense slack fill can be viewed as inherently deceptive.")

[4]     Specifically, in the Second Amended Complaint, Bratton cites 21 C.F.R. § 100.100, a Federal regulation which provides: "A container that does not allow a consumer to fully view its contents shall be considered to be filled so as to be misleading [in violation of 21 U.S.C. § 403(d) of the Federal Food, Drug and Cosmetics Act] if it contains nonfunctional slack-fill.  Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein."  21 C.F.R. §100.100(a).

The regulation then provides six exceptions to the prohibition against slack-fill: (1) protection of the package's contents; (2) the requirements of the machinery used to enclose the contents in the package; (3) unavoidable product settling during shipping and handling; (4) the need for the package to perform a specific function, such as playing a role in preparation

Hershey argues that to make out a claim under the MMPA, Bratton must allege more than mere violation of Federal slack-fill rules.  Doc. 55, p. 8 of 19 (and citations therein).  Regardless of whether Bratton may prove his MMPA claim by pointing to such violation, an issue that has not been fully briefed by both parties at this time, the existence of the Federal prohibition against slack-fill supports the reasonableness of a consumer's belief that the package of candy he purchases will not have 29% or 41% non-functional slack-fill.[5]

Hershey argues that "[c]onsumers are well aware of the fact that substantially all commercial packaging contains some empty space"; that "[i]t is common knowledge in 'our industrial civilization' that  substantially all packaged goods include some amount of empty or 'head' space, which is necessary for efficient manufacturing and distribution"; and that "a reasonable consumer, upon picking up the Reese's Pieces or Whoppers container, would instantly realize that it is not filled to the brim: with each movement of the package, its contents noticeably and audibly rattle."  Doc. 48, pp. 8, 15-16 of 22.  No such allegations are in Bratton's complaint, which is the pleading that controls for purposes of Hershey's motion to dismiss.

Furthermore, to the extent that Hershey's statements are couched as facts, they are not facts of which the Court may take judicial notice.  Under Federal Rule of Evidence 201(b), the Court may take judicial notice of a "fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be

---

of a food, where clearly communicated to consumers; (5) the package is a reusable container which has a part in the preparation of the food, and has a significant and independent value; or (6) the inability to increase the level of fill or reduce the packaging, such as to accommodate required food labeling or to accommodate tamper-resistant devices.

As noted above, Bratton alleges that the six exceptions do not apply to Hershey's packaging.

[5]     Hershey also briefly states that the Federal regulations permit *functional* slack fill, Doc. 48, p. 10 of 22, without further argument.  At the motion to dismiss stage, and in view of Bratton's allegations that Hershey's packaging does not meet an exception, the issue of whether there is permissible, functional slack-fill under the Federal regulations is not before the Court.

questioned." Such facts "can include[,]" for example, "well-established scientific theories and principles." *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 904 (8th Cir. 2017) (citation omitted) (holding that in deciding a motion for judgment on the pleadings, the district court did not abuse its discretion by taking judicial notice of fact that the element radium is a solid that emits alpha particles; such a fact was not subject to reasonable dispute). Hershey points to no authority demonstrating that its statements are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, nor is the Court aware of such authority.[6]

Moreover, Hershey's statement that a reasonable consumer would instantly realize upon picking up a box that it is not "filled to the brim" because the contents rattle does not go to what Bratton has alleged. Bratton has alleged that the boxes are "substantially empty," have "substantial, non-functional slack-fill," and have an "amount of slack-fill [that] cannot be justified"; that industry-standard machines are capable of filling and enclosing the boxes "with far less slack-fill"; and that "the level of fill…can certainly be increased." Doc. 33, pp. 2, 8, 11, and 13. He does not allege that the boxes should be "filled to the brim," let alone that the packaging is misleading because the contents do not rattle. Nonetheless, even in the context of what Bratton has alleged, whether a reasonable consumer would notice rattling in the 13-second course of making the purchasing decision and what a consumer would make of it, let alone instantly

---

[6] Hershey does cite *McKinniss v. Gen. Mills, Inc.*, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007), for the proposition that the Court may take judicial notice that "a reasonable consumer, upon picking up the Reese's Pieces or Whoppers container, would instantly realize that it is not filled to the brim: with each movement of the package, its contents noticeably and audibly rattle[.]" Doc. 48, p. 16 of 22. The court in *McKinniss* did not take judicial notice of movement of the contents of a package. The court simply took "judicial notice of the actual packaging filed by Defendant…which portray[ed] the images and words on Defendant's packaging better than the color printouts attached to the" complaint. *Id.* at 3.

conclude the boxers are as much as much as 29% or 41% slack-filled, are questions of fact.[7]

In addition, Hershey's statement that "some" empty space in the boxes is related to "efficient manufacturing and distribution" is at odds with Bratton's allegation that the slack-filled space in the boxes takes up as much as 29% and 41% of the boxes' space, that the slack-filled space serves no purpose and is not related to the settling of the contents, and that nothing about the manufacturing process prevents Hershey from filling the boxes fuller. To the extent that Hershey disputes these allegations, such dispute cannot be resolved on a motion to dismiss.

Hershey further argues that the clear and accurate labeling on the packages—net weight, number of pieces of candy per serving, and number of servings per box—is fatal to Bratton's claim because it tells a consumer how much candy is in the box. The Missouri Court of Appeals recently rejected an analogous argument in *Murphy.* That case involved a consumer's claim under the MMPA against the manufacturer of a muffin mix that was labelled "all natural." 503 S.W.3d at 312-313. The package's ingredient label, placed there pursuant to federal law, disclosed that the product contained sodium acid pyrophosphate. The manufacturer argued that the label's ingredient disclosure entitled it to dismissal. But the court "expressly reject[ed] the notion that the 'ingredient list' defense asserted by [the defendant] defeat[ed] [the plaintiff's] claim as a matter of law." *Id.* at 312. The court explained that an ingredient list is not required to be placed on packaging "so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield from liability for that deception." *Id.* at 313 (citation omitted). The court further held that a reasonable consumer would expect that the ingredient list comported with the representations on the packaging, and

---

[7]     As noted in footnote 1, Hershey has deposited what it described as "samples of the products at issue in this matter" with the Court. At the motion to dismiss stage, the Court cannot make findings of fact about what conclusions a reasonable consumer would draw about the amount of product in the course of deciding to purchase the boxes.

that in any event, the manufacturer was in the superior position to know and understand the ingredients in the product, and whether they comported with the packaging. *Id.* The court held that the allegations were sufficient to survive a motion to dismiss.

The "all natural" package labelling in *Murphy* is analogous to the information suggested to consumers by the dimensions of Hershey's opaque, non-pliable cardboard boxes. As discussed above, the dimensions of the boxes can suggest to reasonable consumers how much candy is in them, and consumers tend to choose larger packages, thinking they are a better value. Consumers also tend to make their purchasing decision in about 13 seconds. Following the *Murphy* rationale, a reasonable consumer would expect the candy boxes' labeling information to comport with the dimensions of the box and it is Hershey that is in the superior position to know whether the dimensions do. In other words, similar to the *Murphy* scenario, the question of whether a consumer would figure out, from the labeling information and in the 13 seconds spent making a purchasing decision, that the boxes contain 29% and 41% slack-filled space rather than the amount suggested by the dimensions of the box goes to reasonableness, which is a question of fact.

Moreover, Hershey's narrow focus and emphasis on the net weight, number of pieces of candy per serving, and servings per box, as printed on the boxes, overlooks that the Court must consider the plausibility of the complaint as a whole, not the plausibility of each individual allegation. *Zoltek,* 592 F.3d at 896 n.4. In fact, elsewhere in its briefing Hershey acknowledges that "when considering slack-fill claims, context is crucial." Doc. 55, p. 11 of 19. Hershey also overlooks that the MMPA is both written and construed broadly to serve its purpose of consumer protection. *High Life Sales,* 823 S.W.3d at 498 and 34 MO. PRACTICE PERSONAL INJURY AND

TORTS HANDBOOK § 29:2.  Narrowly focusing on an aspect of the labeling does not serve the purpose of the MMPA.[8]

Hershey also cites a case decided in this district, *Kelly v. Cape Cod Potato Chip Co.,* 81 F.Supp.3d 754 (W.D. Mo. 2015), in which the court dismissed an MMPA challenge to a "natural" claim on the front label of a bag of potato chips.  The federally-mandated ingredient list on the back of the package disclosed several preservatives and artificial ingredients.  The *Kelly* court held that considering the package as a whole, the "natural" statement on the front of the bag could not have deceived a reasonable purchaser.  *Id.* at 762.  However, *Kelly* was decided before *Murphy*, in which the Missouri Court of Appeals expressly rejected the ingredient-label defense at the motion to dismiss stage.  In view of the *Murphy* decision, *Kelly* is wrong to the extent that it holds, as a matter of law, that consumers are responsible for evaluating whether some information on a package label is inconsistent with other information on the label.  Therefore, *Kelly* does not change this Court's analysis.  *See also Thornton,* 2016 WL 4073713 (decided after *Kelly* and *Murphy*, and holding that a "nothing artificial" label on a muffin mix package might be misleading under the MMPA, notwithstanding the disclosure of two artificial substances on the ingredient label; whether a reasonable consumer might be deceived involved a factual inquiry and the manufacturer's motion to dismiss must therefore be denied).

Both parties cite a number of decisions, rendered by courts nationwide and involving other states' laws, in support of their respective arguments about the slack-fill.  Extended

---

[8]     *See also Fed. Trade Comm'n v. Standard Educ. Soc.*, 302 U.S. 112, 116 (1937) (Holding, in an action to enforce an order of the Federal Trade Commission to cease and desist from certain unfair methods of competition:  "The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business.  Laws are made to protect the trusting as well as the suspicious….")

discussion of the various cases cited by the parties would not be useful to the analysis, largely because it is Missouri law that controls in this case. The Missouri Supreme Court has also explained that courts must make case-by-case determinations of whether a defendant's conduct violates Missouri's consumer protection law. *Huch,* 290 S.W.3d at 724.

In any event, the slack-fill cases from other jurisdictions to which Hershey points were dismissed based on the labels' net weight and quantity disclosures. *See* Doc. 48, pp. 14-15 of 22 (citing *Ebner v. Fresh, Inc.,* 2013 WL 9760035, *7-9 (C.D. Cal. Sept. 11, 2013); *Fermin v. Pfizer, Inc.,* 2016 WL 6208291, *2 (E.D.N.Y. Oct. 18, 2016); and *Bush v. Mondelez International, Inc.,* 2016 324990, *2 (N.D. Cal. Dec. 16, 2016)), and Doc. 55, pp. 11-13 (same citations). However, the *Murphy* case discussed above is a recent, analogous case decided under the MMPA by the Missouri Court of Appeals, which rejected the "ingredient label defense" and held that the question of a how a "reasonable consumer" would perceive certain packaging information was a question appropriately addressed on a motion for summary judgment or trial, not a motion to dismiss. The issues in this case are controlled by Missouri law, which is at odds with the slack-fill cases Hershey cites.

Moreover, courts that have allowed slack-fill, consumer protection cases to proceed beyond the motion to dismiss stage tend to do so because reasonableness was at issue and could not be resolved short of summary judgment or trial. *See, e.g., Izquierdo v. Mondelez International, Inc.,* 2016 WL 6459832, *6-7 (S.D.N.Y. Oct. 26, 2016) (denying motion to dismiss a claim concerning slack-filled candy boxes; a reasonable consumer could be misled even if the candy box displayed the net weight and listed the number of pieces inside); *Thomas v. Costco Wholesale Corp.*, 2014 WL 1323192, at *9 (N.D. Cal. Mar. 31, 2014) (holding that where the plaintiff claimed that products she purchased were unjustifiably slack-filled and that she was

misled, the plaintiff had adequately pled that a reasonable consumer could be deceived, and the claim could not be resolved at the motion to dismiss stage); and *Samet v. Procter & Gamble Co.*, 2013 WL 3124647, at \*9 (N.D. Cal. June 18, 2013) (denying motion to dismiss where the plaintiffs alleged facts showing that they were deceived by the slack-filled potato chip and fruit snack packaging, and thought they were receiving more of the product than they actually did; even if a consumer would expect extra air in a bag of such snacks, "the amount of slack-fill expected by the reasonable consumer is a debatable factual question that is inappropriate to resolve at the motion to dismiss stage").[9]

The Court concludes that the analysis consistent with Missouri law leads to the conclusion that Bratton has plausibly alleged a claim under the MMPA and that reasonableness is an issue of fact, which cannot be resolved on a motion to dismiss.

### 2. Allegation of an ascertainable loss

Hershey further argues that the Bratton failed to allege ascertainable loss under the MMPA. This element is straightforward. Ascertainable loss involves "the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Murphy*, 503 S.W.3d at 313 (citing *Schoenlein v.*

---

[9]     *See also Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (whether the labeling on the defendant's Fruit Juice Snacks product "could likely deceive a reasonable consumer" was not a question that could be resolved on a motion to dismiss; the lower court's dismissal was reversed); *Burton v. Hodgson Mill, Inc.*, 2017 WL 1282882, at \*6 (S.D. Ill. Apr. 6, 2017) ("This Court finds that the crux of this issue is a reasonable person's interpretation of the various labels and representations on a given product—thus, this question is best left for the jury."); *Atik v. Welch Foods, Inc.*, 2016 WL 5678474, at \*10 (E.D.N.Y. Sept. 30, 2016) (denying a motion to dismiss where "a reasonable consumer could expect a fruit snack to contain a significant amount of fruit, especially where, as here, the packaging and labeling emphasize the presence of fruit in the Products"); and *Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Co.,* 2015 WL 3645262, at \*7-9 (E.D. Mo. June 10, 2015) (holding that "the effect that an ingredient statement may have on a reasonable consumer's understanding of advertising and product labels involves a factual inquiry").

*Routt Homes, Inc*., 260 S.W.3d 852, 854 (Mo. App. 2008)). Furthermore, the loss must be a result of the alleged unlawful practice. *Id.* (citing *Plubell v. Merck & Co.,* 289 S.W.3d 707, 714 (Mo. App. 2009)).

*Murphy* was a challenge under the MMPA to the labelling of a muffin mix as "all natural," notwithstanding that the mix had synthetic ingredients. The plaintiff alleged that the mix was worth less than the product as represented. The Missouri Court of Appeals held that the plaintiff stated an ascertainable loss under the benefit of the bargain rule. The court further concluded that the plaintiff had adequately alleged the loss was the result of the allegedly deceptive labeling when he pled that consumers were interested in purchasing healthy food products without potentially harmful synthetic ingredients, and that the defendant had taken advantage of that desire by using the "all natural" label to entice consumers to pay a premium for the product. *See also Plubell*, 289 S.W.3d at 715 (the plaintiff alleged that a drug manufacturer violated the MMPA by failing to disclose and concealing the drug's serious safety risks; the court held that the plaintiff's allegation that the drug was worth less than as represented stated an ascertainable loss under the benefit-of-the-bargain rule).

Bratton's allegations of ascertainable loss are analogous to those held sufficient in *Murphy*. Bratton alleged that the boxes were opaque and that the size of the boxes led him to believe there was more candy in them than they actually contained. He alleged that the value of the products he purchased was less than the value of the products as represented by size of the boxes. He alleged that product purchasing decisions are heavily dependent on the packaging, and the package dimensions in particular, and that consumers tend to choose a larger package over a smaller one, thinking it is a better value. Bratton has sufficiently alleged ascertainable loss for

purposes of withstanding the motion to dismiss and that the alleged loss was the result of the packaging.

Hershey's authorities, district court cases decided under the MMPA, do not change the analysis. *See* Doc. 48, pp. 17-18 of 22; Doc. 55, pp. 13-14 of 19. Both *Thompson v. Allergan USA, Inc.,* 993 F.Supp.2d 1007 (E.D. Mo. 2014), and *Carter v. Alcon Labs., Inc.,* 2014 WL 989002 (E.D. Mo. Mar. 13, 2014), involved allegations that the defendant drug manufacturers overfilled single-dose medication bottles, so that consumers purchased more medication than they needed. In neither case did the plaintiffs allege that the defendants misrepresented the amount of product that the bottles contained. The courts in both cases held that the consumers received what they bargained for, and therefore failed to allege ascertainable loss under the MMPA. The court in *Polk v. KV Pharm. Co.*, 2011 WL 6257466, at \*5 (E.D. Mo. Dec. 15, 2011), concluded that the plaintiff had failed to allege ascertainable loss because, among other reasons, the plaintiff merely alleged the legal conclusion that the product, a prescription medication, was "adulterated" and never alleged that he did not receive the benefit for which he bargained, *i.e.,* a medication that performed as intended. In contrast here, and as discussed above, Bratton sufficiently alleges that the packaging was misleading and that he did not obtain what he bargained for.

Bratton has plausibly alleged an ascertainable loss under the MMPA.

### B. Standing to pursue injunctive relief under Count I

The MMPA expressly provides for injunctive relief, as well as damages and attorney fees, § 407.025.2, "not only to remedy violations…, but also to prospectively deter prohibited conduct and protect Missouri citizens," *Berry v. Volkswagen Grp. of Am., Inc.,* 397 S.W.3d 425, 433 (Mo. 2013) (en banc). Hershey argues that whatever comes of Bratton's claim for damages under the MMPA, his claim for injunctive relief must be dismissed for lack of Article III standing.

According to Hershey, now that Bratton is aware of the slack-filled space in the boxes, he cannot plausibly claim that he will be subject to continuing injury, so injunctive relief would not affect him.

Article III of the United States Constitution grants federal courts limited jurisdiction to decide "cases and controversies." To satisfy this jurisdictional standing requirement, a plaintiff must establish (1) an injury in fact, which is (2) fairly traceable to the defendant's conduct, and which (3) will likely be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-181 (2000). To establish "injury in fact" for purposes of injunctive relief, a plaintiff must show that he "faces a threat of ongoing or future harm." *Park v. U.S. Forest Serv.,* 205 F.3d 1034, 1037 (8th Cir. 2000). Under the redressability prong, the plaintiff must demonstrate that he "personally would benefit in a tangible way from the court's intervention." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 104 n. 5 (1998).

Bratton has pled a threat of ongoing or future harm, which is fairly traceable to Hershey's conduct. Specifically, he alleges that the he was misled by the packaging to believe the boxes contained more product than they actually did, and suffered an ascertainable loss, and that had he known the boxes contained substantial slack-filled space he would not have purchased them or would have purchased them on different terms. He alleges that Hershey continues to sell slack-filled candy boxes*, i.e.,* the unlawful practice is ongoing.

Bratton has also pled that he would personally benefit in a tangible way from injunctive relief, by alleging that if Hershey changes its practices, he is likely to buy the products in the future, and that he seeks to be relieved from Hershey's unlawful practice by the issuance of injunctive relief.

Hershey places emphasis on Bratton's discovery of the slack-fill in the Reese's Pieces and

Whoppers boxes.  But the fact that Bratton discovered Hershey's allegedly unlawful practice does not make the packaging less misleading, nor mean that the practice is not ongoing.  Bratton need plead nothing more to survive a motion to dismiss a request for injunctive relief for lack of Article III standing.  *See Whitmore v. Arkansas,* 495 U.S. 149, 158-59 (1990) (discussing *United States v. SCRAP,* 412 U.S. 669 (1973)) (acknowledging that even attenuated injuries or "thin" allegations are sufficient to confer Article III standing at the motion to dismiss stage); and *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, 2016 WL 128098, at \*1 (N.D. Ill. Jan. 12, 2016) (cautioning that standing to pursue injunctive relief and entitlement to such relief are two separate concepts).  *See also Chester v. TJX Companies, Inc.*, 2016 WL 4414768, at \*8 (C.D. Cal. Aug. 18, 2016) ("It is inconceivable to think prospective relief in the false advertising context is bound by the rules of 'fool me once, shame on you; fool me twice shame on me.'  The Court...refuses to find that, once a plaintiff has alleged that she was deceived, she likely will not voluntarily be deceived again—and thus no court can enjoin deceptive practices without ignoring Article III's standing requirements."); and *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at \*15 n.23 (E.D.N.Y. July 18, 2013) (where the defendants' allegedly deceptive advertising and labeling practices were ongoing, and the plaintiffs sought to be relieved from such practices in the future, the fact that the plaintiffs discovered the alleged deception years earlier did not mean the plaintiffs lacked Article III standing) (and collecting cases).

Hershey's motion to dismiss the request for injunctive relief is denied.

### C.     Count II—Unjust enrichment

Bratton's unjust enrichment count is brought on behalf of a putative nationwide class.  Doc. 33, p. 2, ¶ 5 ("Plaintiff seeks to represent a Nationwide Class and a Missouri Consumer Subclass[.]")  Bratton alleges that by purchasing the products, he and the putative class members

conferred a benefit on Hershey in the form of the purchase price of the slack-filled products; Hershey knew of the benefit; Hershey appreciated the benefit because the sales generated revenue; Hershey's acceptance and retention of the benefit is inequitable and unjust because it was obtained by Hershey's fraudulent and misleading representations and omissions; and equity cannot in good conscience permit Hershey to be economically enriched for such actions. Doc. 33, p. 20, ¶¶ 79-83. Bratton further alleged, with respect to himself, that he purchased the products for about $1.00 apiece in a Missouri grocery store.

Hershey argues that the count should be dismissed because it is too vaguely pled and does not identify which states' laws apply; that Bratton lacks standing in any event to assert an unjust enrichment claim under any state's law except Missouri's; and that the count is premised on the same facts as the MMPA count which fails to state a claim and so should be dismissed on the same basis. Bratton responds that Hershey should move for a more definite statement under Fed. R. Civ. P. 12(e); that his ability to represent non-Missourians should be decided at the class certification stage; and that Hershey does not challenge his standing under Missouri law in any event.

The Court will address Missouri-specific issues first. There are three elements to a claim of unjust enrichment under Missouri law. First, a plaintiff must confer a benefit and enrich a defendant. Second, the enrichment must be at the expense of the plaintiff. Finally, the Court must determine that it would be unjust for the defendant to retain the benefit. *Miller v. Horn,* 254 S.W.3d 920, 924 (Mo. App. 2008). Enrichment is unjust when "a person retains the benefit and enjoys the benefit conferred upon him without paying its reasonable value." *Webcon Group, Inc. v. S.M. Properties, L.P.,* 1 S.W.3d 538, 542 (Mo. App. 1999). Bratton's pleading and the reasonable inferences drawn therefrom address each of the elements with sufficient specificity to

state a claim for unjust enrichment under Missouri law. Bratton alleges that a benefit was conferred on Hershey in the form of payment of the purchase price for the slack-filled products by him and the putative class members, and that it would be unjust to permit Hershey to retain the benefit in view of the packaging, which misled purchasers about the amount of product inside. Accordingly, the unjust enrichment claim is sufficiently pled under Missouri law.[10] Bratton has also alleged sufficient facts to demonstrate Article III standing to pursue the claim, in that he has alleged an injury in fact, which is fairly traceable to Hershey's conduct, and which will likely be redressed by a favorable decision. *Friends of the Earth,* 528 U.S. at 180-181.

Hershey also argues that Bratton has no standing to assert claims under other states' laws and that the issue is ripe for determination now. Bratton argues that he has standing to bring an unjust enrichment claim under Missouri law for his own injury, and that whether he may represent others with a similar injury is a question that the Court has discretion to, and should, decide later, at the class certification stage.

The parties point to no Eighth Circuit authority addressing this issue, nor has the Court located any. However, the Court finds persuasive the majority of the authorities that follow the class certification approach, limiting the standing inquiry to the named plaintiff's individual standing, and deferring consideration of whether the plaintiff may represent others until a later stage. *See, e.g., In re: McCormick & Co., Inc.*, 2016 WL 6678340, at \*12–13 (D.D.C. Nov. 11, 2016) (and cases cited therein). As the *McCormick* court explained, it is more logical to consider

---

[10]    As discussed in a preceding section, the Court has concluded that Bratton states a claim under the MMPA. It is generally permissible to pursue alternative theories at the pleading stage, and courts generally permit unjust enrichment claims to proceed alongside a properly-pled MMPA claim. *See, e.g., Murphy,* 503 S.W.3d at 314 (because the trial court's dismissal of an MMPA claim was reversed, the dismissal of the unjust enrichment claim, which was based on the same conduct, was also reversed); *Thornton,* 2016 WL 40373713, at \*4 (denying motion to dismiss unjust enrichment claim, after concluding that the plaintiff had plausibly stated a claim under the MMPA).

a named plaintiff's ability to raise other state-law claims as a question of commonality, typicality, and adequacy under Rule 23, than as a question of standing. Standing analysis cannot address whether a named plaintiff should be able to bring claims on behalf of a class of others. However, Rule 23(a)'s requirements were designed precisely to address whether a named plaintiff can do so. In addition, the class certification approach has the benefit of resolving any disjuncture between a named plaintiff's injuries and the class's without engaging in unnecessary constitutional adjudication. *See* 1 NEWBERG ON CLASS ACTIONS § 2.6 (and citations therein at n.27).

Here, the standing doctrine's focus on ensuring that a case or controversy exists has been satisfied with respect to Bratton's individual claim for unjust enrichment. However, at this stage of the litigation, there is neither evidence nor briefing before the Court concerning Bratton's ability to represent others under the requirements of Rule 23(a). Therefore, whether Bratton may pursue claims for unjust enrichment on behalf of others is a question that is appropriately deferred.

For the foregoing reasons, Hershey's motion to dismiss Count II is denied.

## III.  Conclusion

Defendant The Hershey Company's motion to dismiss, Doc. 47, is denied.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 16, 2017
Jefferson City, Missouri