# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

ROBERT BRATTON, individually and
on behalf of all others similarly situated,

    Plaintiff,

vs.

THE HERSHEY COMPANY,

    Defendant.

No.: 2:16-cv-4322-C-NKL

## ORDER

This case concerns filling requirements for boxes of Reese's® Pieces® and Whoppers® candies. Defendant, The Hershey Company, moves for summary judgment. For the reasons set forth below, the motion is granted.

## I.    UNCONTESTED FACTS

Hershey has manufactured and sold Whoppers in 5-ounce cardboard boxes since 2001, and Reese's Pieces in 4-ounce cardboard boxes since 2002, and throughout these periods, the size of each box has remained consistent. Doc. 118, at 2, ¶ 1; Doc. 125, at iv, ¶ 1. Since at least 2006, Plaintiff Robert Bratton has purchased both products regularly. Doc. 118, at 2, ¶ 2; Doc. 125, at iv, ¶ 2. Mr. Bratton guessed that, on average, he purchased each of these products "at least five [times] a month." Doc. 118, at 2, ¶ 3; Doc. 125, at iv, ¶ 3. This totals approximately 600 boxes of each of the boxes of candy at issue in this litigation. Doc. 118, at 2, ¶ 5; Doc. 125, at v, ¶ 5.

Mr. Bratton testified that he initially "expected the boxes to be full," but "at some point . . . [he] realized that they're not . . . ." Doc. 118-4 (Bratton Deposition Tr.), at 71:16-72:11. Although Mr. Bratton claimed to have always clung to his hope that the boxes would be full, he

acknowledged that he did not "expect the box to be miraculously filled the next time [he] b[ought] it . . . ." *Id.*, at 72:17-25. Mr. Bratton guessed that the 600 or so boxes of Whoppers and Reese's Pieces that he purchased in the last ten years contained between 30 and 40 percent empty space. *Id.*, at 98:14-99:24. Despite his knowledge concerning approximately how much candy and how much empty space would be in each box, he continued to buy an average of five boxes a month. *See, e.g., id.*, at 77:7-20; 76:21-24.

On September 22, 2016, Plaintiff purchased a 4-ounce box of Reese's Pieces and a 5-ounce box of Whoppers from a Gerbes store in Columbia, Missouri. Doc. 118, at 3, ¶ 10; Doc. 125, at vi, ¶ 10. These are the only purchases of the Reese's Pieces and Whoppers boxes that Plaintiff can specifically recall. Doc. 118, at 4, ¶ 12; Doc. 125, at vi, ¶ 12. Mr. Bratton paid $1.00 for each box of candy. Doc. 118, at 4, ¶ 13; Doc. 125, at vi, ¶ 13. When asked at his deposition if there was "a price that [he] would not have been willing to pay for the Reese's Pieces box," he replied, "[I]f they'd been $1.50 or $2 or something, I probably would have waited until I could get them somewhere else . . . ." Doc. 118-4, at 104:3-104:9. But he also acknowledged having paid $4 for a box of the candies at the movie theater. *Id.*, at 104:10-14. Mr. Bratton estimates that he paid $4.00 a box for approximately 30 percent of the boxes he purchased in the last decade. Doc. 118, at 3, ¶ 6; Doc. 125, at v, ¶ 6.

Mr. Bratton claims that, since learning of the facts giving rise to this litigation, he "ha[s] not bought any more" theater boxes of Reese's Pieces or Whoppers. Doc. 125-1, at Tr. 86:16-87:1.

## II. PROCEDURAL POSTURE

Mr. Bratton filed this lawsuit in state court as a putative class action. Count I alleges violation of the Missouri Merchandising Practices Act (MMPA) and seeks injunctive relief and

damages. Count II alleges unjust enrichment and seeks restitution or disgorgement of Hershey's purported economic enrichment.

Hershey removed the case to federal court and then moved to dismiss the case. The Court denied Hershey's motion to dismiss. Doc. 64.

Hershey now moves for summary judgment on both of Mr. Bratton's claims.

### III. DISCUSSION

A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although, the Court must resolve all conflicts of evidence in favor of the nonmoving party, the Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Mr. Bratton has brought two claims against Hershey, for violation of Missouri's Merchandising Practices Act ("MMPA"), and for unjust enrichment. As discussed below, Mr. Bratton cannot establish the existence of an element essential to each of these two claims. The claims therefore must be dismissed.

#### A. MMPA Claim

The elements of a claim under the MMPA are: (1) the purchase of goods or services, (2) for personal or household purposes; and (3) an ascertainable loss of money or property, (4) resulting from or caused by the use or employment by another person of a method, act, or practice

declared unlawful under the MMPA. Mo. Rev. Stat. §§ 407.020 and 407.025.1; *Murphy v. Stonewall Kitchen, LLC,* 503 S.W.3d 308, 311 (Mo. App. 2016).

Critically, "causation is a necessary element of an MMPA claim." *Owen v. GMC*, 533 F.3d 913, 922 (8th Cir. 2008); *see also Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 843 (Mo. App. 2015) (affirming grant of summary judgment in defendant's favor where the "undisputed facts show[ed] [plaintiff-]Appellants w[ould] not be able to prove an ascertainable loss caused by th[e] alleged representation"); MO. APPROVED INSTRUCTIONS (CIVIL) 39.01 (7th ed.) (verdict director for MMPA violation, requiring jury to find that "as a direct result of such conduct, plaintiff sustained damage"). In other words, a plaintiff who was not injured by a purported MMPA violation cannot sue for the violation.

A plaintiff who "did not care" about an allegedly misleading marketing practice, or who "knew about" the practice and "purchased . . . [the] products anyway," was not injured by the practice. *State ex rel Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 862 (Mo. Banc. 2008) (finding that lower court abused discretion in certifying class because "proposed class could include millions who were not injured and thus have no grievance under section 407.025"); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, No. 08-1967-ODS, 2011 WL 6740338, at *5 (W.D. Mo. Dec. 22, 2011) (denying class certification because "it includes individuals who have not suffered an injury in fact," explaining that "[i]ndividuals who knew about BPA's existence and the surrounding controversy before purchasing Defendants' products have no injury"); *Owen v. GMC*, No. 06-4067-NKL, 2007 WL 1655760, at *5 (W.D. Mo. June 5, 2007) (granting summary judgment in favor of defendant where plaintiffs failed to show that they would not have purchased the product had they been aware of the purportedly unlawful practice), *aff'd*, 533 F.3d 913 (8th Cir. 2008); *see also McCall v. Monro Muffler*

4

*Brake, Inc.*, No. 10-269, 2013 WL 1282306, at *5 (E.D. Mo. Mar. 27, 2013) (dismissing MMPA claim at summary judgment stage where, *inter alia*, undisputed evidence showed that the named plaintiffs "could not have been misle[]d by the disclosures").

Mr. Bratton has admitted that, since well before the class period, he has been aware of approximately how much candy and how much empty space was in each box of Whoppers and Reese's Pieces, and that he nonetheless continued to purchase the boxes. Therefore, he cannot demonstrate that he was injured by any purportedly deceptive practice by Hershey. *Cf. Bratton v. Hershey Co.*, No. 16-4322, 2017 WL 2126864, at *8 (W.D. Mo. May 16, 2017) ("Bratton alleged . . . that the size of the boxes led him to believe there was more candy in them than they actually contained. He alleged that the value of the products he purchased was less than the value of the products as represented by size of the boxes. . . . Bratton has sufficiently alleged ascertainable loss for purposes of withstanding the motion to dismiss and that the alleged loss was the result of the packaging."); *Edmonds v. Hough*, 344 S.W.3d 219, 223-24 (Mo. Ct. App. 2011) (finding that defendant was not entitled to summary judgment because there was "a genuine issue of material fact as to whether [their] appraisal was deceptive, fraudulent, misrepresentative, omitted material facts, or otherwise unlawful" and the plaintiff undisputedly had "paid $275 for the appraisal"—which "alone constitute[d] an ascertainable loss under the MPA"); *Plubell v. Merck & Co*, 289 S.W. 3d. 707, 714 (Mo. Ct. App. 2009) (permitting class certification where plaintiffs alleged that "the product they . . . purchased was worth less than the product they thought they had purchased").

Mr. Bratton argues that the reasonable consumer standard prohibits any inquiry into whether he himself was deceived. But while the reasonable consumer standard is relevant to whether a practice is unlawful under the MMPA, it is not relevant to whether there was an

ascertainable loss to the plaintiff, as even the cases that Mr. Bratton cites demonstrate. *See Guido v. L'Oreal, USA, Inc.*, No. 11-1067, 2013 WL 3353857, at **10-11 (C.D. Cal. July 1, 2013) (holding that the objective "reasonable consumer" test would be used to determine whether the defendant had "violated the false advertising prohibitions" under California law, and noting that relief would be available "without individualized proof of deception, reliance and injury, *so long as the named plaintiffs demonstrate injury and causation*") (emphasis added); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 762 (7th Cir. 2014) (applying the "reasonable consumer" standard to determination of whether packaging was misleading, and reversing grant of summary judgment to defendant where, "[t]aking all disputed facts in the light most favorable to [plaintiff], a reasonable juror could conclude that [she] was deceived").[1] Thus, while a plaintiff need not show reliance to prove that a defendant committed an unlawful practice, he must show that he was injured in order to succeed on an MMPA claim. *See, e.g., Bratton*, 2017 WL 2126864, at *8 ("Bratton sufficiently alleges that the packaging was misleading *and* that he did not obtain what he bargained for.") (emphasis added). Here, Mr. Bratton's "complete failure of proof concerning an essential element of [his] case"—injury caused by an unlawful practice—"necessarily renders all other facts"—including whether a reasonable consumer would have been deceived—"immaterial." *Celotex*, 477 U.S. 317, 323 (1986).

Plaintiff's attempt to distinguish *Owen v. Gen. Motors Corp.*, No. 06-4067-NKL, 2007 WL 1655760, *aff'd,* 533 F.3d 913 (8th Cir. 2008), *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 858 (Mo. 2008), and *In re BPA*, 2011 WL 6740338, at *1, fails. In *Owens*, the Court noted that, in order for a plaintiff to have sustained a loss "as a result of" the defendant's

---

[1] Plaintiff also cites *Lewis v. Nw. Collectors, Inc.*, No. 15-3671, 2017 WL 385041 (N.D. Ill. Jan. 25, 2017), but that case concerns a claim under the Federal Debt Collection Practices Act, which is subject to a different standard, and therefore is not relevant. *Id.* at 4.

purportedly misleading practice, the plaintiff was required to show that he would "not have sustained the loss but for the" practice. 2007 WL 1655760, at *5. In other words, the plaintiffs needed to show that "they would not have purchased the[ product] had [defendant] told them of the potential defect . . . ." *Id.* Similarly, *Coca-Cola* and *In re BPA*, "involved misrepresentations that were either discovered by the plaintiffs or, if discovered, would not have changed the plaintiff's conduct." Doc. 125, at 12. Mr. Bratton argues that these cases are distinguishable because he ceased purchasing the Whoppers and Reese's Pieces boxes upon "discover[ing] that Defendant was underfilling the Products in violation of the law," which shows that he would not have purchased the candy boxes if he had known that they had been unlawfully underfilled. *Id.* But Mr. Bratton knew for at least a decade approximately how much candy and how much empty space was in each box of Whoppers and each box of Reese's Pieces, and nonetheless continued to purchase them. Doc. 118-4, at 71:16-72:11, 72:17-25, 98:14-99:24, 77:7-20; 76:21-24. Even if Mr. Bratton learned only recently that the underfilling may have been "in violation of the law," it would not change the fact that he has long known of the alleged underfilling and nevertheless continued to purchase the product. It is Mr. Bratton's knowledge of the facts, not his knowledge of the applicable law, that is relevant. *See, e.g., Huffman v. Credit Union of Texas,* 758 F.3d 963, 968 (rejecting, for statute of limitations purposes, the argument that plaintiffs' "MMPA claims did not accrue until their attorneys advised" them of the alleged unlawful practice, noting that, under Missouri law, "[a] claim accrues when the plaintiff is on 'inquiry notice' of the wrong and damages"). Mr. Bratton's continued purchases of the candy boxes despite his knowledge of how much purported slack-fill they contained is fatal to his MMPA claim.

Mr. Bratton also attempts to argue that his repeated, knowing purchases of the candy boxes do not bar his MMPA claim because an injury can be "ongoing and tied to a course of

7

conduct by the defendant." Doc. 125, at 9. In support, he cites only a California decision discussing whether a plaintiff's claim concerning a product she had been buying for years was time-barred. *See Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015) ("[U]nder the continuous accrual doctrine, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period.") (quotation marks and citation omitted). This "continuous accrual doctrine" is irrelevant to the question of whether Mr. Bratton suffered any injury when he voluntarily purchased candy boxes that he had long believed to be 30-40% slack-filled. Doc. 118-4, at 98:14-99:24.[2]

Finally, the Court rejects Plaintiff's arguments that the summary judgment motion is premature or that Hershey's arguments ought to have been addressed at the class certification stage. No amount of discovery will change the fact that the only plaintiff in this putative class action cannot succeed on his MMPA claim. *See Tinsley v. Covenant Care Servs., LLC*, No. 14-0026, 2016 WL 393577, at **4-5 (E.D. Mo. Feb. 2, 2016) (cited by Plaintiff, Doc. 125, at 13 n.9) (deciding all of the claims in the defendant's summary judgment motion that were "ripe for disposition" and dismissing the entirety of one plaintiff's claims); *McCall*, 2013 WL 1282306, at *5 (granting defendants' summary judgment motion, in part because the named plaintiffs "could not have been misle[]d by the disclosures," and denying plaintiff's motion for class certification as moot).

---

[2] Plaintiff's citation of *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 726–27 (Mo. 2009), which held that the voluntary payment doctrine did not apply where the defendant allegedly provided unsolicited merchandise to consumers and then billed and attempted to collect payment for the unordered merchandise, is equally unavailing. Here, there is no dispute that Mr. Bratton purchased the candy boxes at issue knowingly and voluntarily.

B. **Count II—Unjust enrichment**

Mr. Bratton's unjust enrichment claim fails for the same reason that his MMPA claim fails.

To state a claim for unjust enrichment, Mr. Bratton must plausibly allege that (i) Hershey received a benefit, (ii) at Mr. Bratton's expense, and (iii) allowing Hershey to retain the benefit would be unjust. *See Gerke v. City of Kansas City*, 493 S.W.3d 433, 438 (Mo. App. 2016).

Mr. Bratton alleges that he conferred a benefit on Hershey "in the form of the purchase price of the slack-filled Products" and Hershey's "acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions." Doc. 33, ¶¶ 79, 92. The only fraudulent or misleading representations the complaint alleges concern the candy packaging. *See, generally*, *id*. However, as discussed above, Mr. Bratton was not misled by the packaging. He knew roughly what he was getting every time he purchased one of the candy boxes at issue here, but chose to purchase them anyway. Mr. Bratton therefore cannot establish that Hershey's retention of the purported benefit was unjust—a critical element of his unjust enrichment claim.[3] *See In re BPA,* 2011 WL 6740338, at *4 ("[T]here can be no unjust enrichment if the parties receive what they intended to obtain.") (quoting *American Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281, 293 (Mo. Ct. App. 2003)).

---

[3] Plaintiff appears to concede this point. His suggestions in opposition to Hershey's motion for summary judgment mention unjust enrichment just once, and only to state that "Mr. Bratton's *allegations* are entirely consistent with the damages provisions of the MMPA and unjust enrichment law." Doc. 126, at 10 (emphasis added). At the summary judgment stage, allegations are not sufficient to raise an issue of fact. *Bunch v. Univ. of Arkansas Bd. of Trustees*, 863 F.3d 1062, 1069 (8th Cir. 2017) ("[U]nsupported allegations are insufficient to create a genuine issue of fact so as to preclude granting summary judgment.") (quotation marks and citation omitted).

## IV. CONCLUSION

For the reasons set forth above, Hershey's motion for summary judgment is granted. Mr. Bratton's MMPA and unjust enrichment claims are dismissed with prejudice.

                                              s/ Nanette K. Laughrey
                                              NANETTE K. LAUGHREY
                                              United States District Judge

Dated: February 16, 2018
Jefferson City, Missouri